57 CCPA

**Application of Frank N. STEPANEK, Jr.**

**Patent Appeal No. 8342.**

United States Court of Customs and Patent Appeals.

July 30, 1970.

Reconsideration Denied Oct. 22, 1970.

Robert I. Dennison, Dennison & Dennison, Arlington, Va., attorney of record for appellant. John N. Bain, Popper, Bain & Bobis, Newark, N. J., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Leroy B. Randall, of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

FISHER, Judge.

The issue here is whether the Patent Office Board of Appeals committed reversible error in sustaining the examiner's rejection of claims 7–14 appearing in appellant's application [1] serial No. 498,145, filed October 19, 1965, for "Compositions Containing Detergents and Methods for Treating and Tabletting the Same."

The invention relates to a method of treating detergent compositions before compacting them into tablet form so as to prevent the ingredients from adhering to the tablet press or die. According to the specification, appellant has found that sticking of conventional detergents, such as alkyl aryl sulfonates, to the tabletting die can be obviated by preparing an aqueous slurry of the detergent and sodium chloride in certain relative quantities and spray-drying the

slurry before compacting it with other conventional detergent composition ingredients. The technique is reflected in claim 7, representative of both the process and product claims appealed:

7. A detergent tablet consisting essentially of,

(a) a self supporting compacted mass of a surfactant selected from the group consisting of the biodegradable and non-biodegradable alkyl benzene sulfonate petrochemical detergents, sodium laurel sulfate and the alkali salts of palmitic, stearic and oleic acids,

(b) sodium chloride, and

(c) a combination of chemically reactive reagents which interreact to liberate carbon dioxide on contact with water,

(d) the surfactant and the sodium chloride having been premixed as a slurry containing at least one part by weight sodium chloride to six parts by weight surfactant when the surfactant comprises approximately no more than 10% of the final rate [sic: weight] of the tablet and the slurry is thereafter dried to produce a dry solid before mixing with the said combination of reagents and subjecting the same to pressure in a confined space sufficient to form a self-supporting compacted mass.

In light of concessions made by appellant as to the applicability of certain secondary references [2] cited by the Patent Office in support of a rejection under 35 U.S.C. § 103, the dispositive question, as we see it, is whether the examiner and board erred in their determinations that the principal reference—a patent to Laskey [3]—discloses spray-drying a slurry containing detergent and sodium

---

1. The present application is a continuation-in-part of serial Nos. 311,368 and 67,182, filed September 26, 1963 and November 4, 1960, respectively.

2. Appellant acknowledges in his brief: Since Applicant does not predicate patentability upon the reference to $CO_2$ generating reagents, the secondary ref-

erences would appear to be moot and not applied to reject the claims on the principal issue of invention [i. e., obviousness].

3. U. S. patent No. 3,081,267, issued March 12, 1963 on an application filed December 31, 1959.

chloride in the claimed amounts, and then compressing those spray-dried granules into tablets. To that matter, we now turn.

Laskey noted that "heavy duty synthetic detergent compositions have a strong tendency to stick to the dies which are used to compress the compositions into tablet form." He solved that problem by providing "a detergent composition so formulated that when it is compressed at moderate pressures and with rotating compressive forces, an effective detergent tablet is produced which is strong, which quickly disintegrates on addition to the wash water and which will not adhere to the dies." Regarding that composition, Laskey states:

The granular detergent composition to be compressed in accordance with the process of this invention can comprise a uniform mechanical mixture of the individual components, *a homogenous mixture such as that obtained by spray drying or roll drying an aqueous slurry of the ingredients,* or a mechanical mixture of the ingredients a portion of which constitutes spray dried granules. The preferred composition to be compressed in accordance with this invention comprises about 60% to about 20% unhydrated granular sodium tripolyphosphate and about 40% to about 80% spray dried granules.

The *spray dried granules contain* part of the sodium tripolyphosphate in the tablet formulation, *all of the nonsoap synthetic detergent and any of the minor ingredients,* such as sodium sulfate, moisture, non-ionic binder, brightening agents or anti-redeposition agents, which are included. Spray-

dried granules in the above range are preferred because the process of spray drying is a convenient way to ensure that the minor components, if any, of the usual detergent compositions are uniformly distributed throughout the composition. [Emphasis supplied.]

In Example 1, Laskey lists sodium chloride as one of the components of his *"spray dried detergent composition"* [Emphasis supplied], the sodium chloride being "added to chemically deaerate the crutcher mix which was spray dried in order to obtain high density granules."

We think it is clear from the above-quoted passages that Laskey, contrary to appellant's arguments, does fully and fairly disclose as one of his contemplated alternative procedures the preparation of a slurry of detergent composition ingredients, including surfactant and sodium chloride, which is subsequently spray-dried and tabletted. That Laskey may not have recognized that a composition prepared by that particular method could be compressed into tablet form without the necessity of rotating the tablet dies during compaction to prevent adherence of detergent to the die surface is quite immaterial in the present circumstances, if only for the reason that appellant's claims are sufficiently broad as not to preclude the rotation of the dies as disclosed by Laskey. We find no error in the board's conclusion that the claimed subject matter would be obvious to one of ordinary skill in the art from a consideration of the cited references.

The view we take renders it unnecessary to consider a separate rejection of the claims under 35 U.S.C. § 112.

The decision is affirmed.

Affirmed.